# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2413-16T2
                 A-2414-16T2

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

      Plaintiff-Respondent,

v.

S.M. and M.M.,

      Defendants-Appellants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF AL.M.,
N.M., K.M. and AB.M., minors.

_____

Submitted October 18, 2018 – Decided  November 5, 2018

Before Judges Simonelli and O'Connor.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FG-16-0069-16.

Joseph E. Krakora, Public Defender, attorney for appellant S.M. (Beryl Foster-Andres, Designated Counsel, on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant M.M. (Louis W. Skinner, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Matthew D. Lane, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors Al.M., N.M., K.M., and Ab.M. (Nancy P. Fratz, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendants S.M. (Susan)[1] and M.M. (Matthew) are the biological parents of four children, who presently are ages three, seven, eleven, and thirteen.[2] On appeal, defendants contend the Division of Child Protection and Permanency

---

[1] We use initials to protect defendants' and their children's identity. See R. 1:38-3(d)(12). We shall sometimes collectively refer to Susan and Matthew as defendants.

[2] Susan has a child from another relationship, who is presently twenty-two years of age. Susan's parental rights to this child were not affected by this proceeding.

(Division) failed to prove by clear and convincing evidence the four-prong

standard set forth in N.J.S.A. 30:4C-15.1(a).[3] We affirm as to both defendants.

We will not recite in detail the history of the Division's involvement with

the family. Instead, we incorporate by reference the factual findings set forth in

---

[3] These four prongs are:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C-15.1(a).]

A-2413-16T2

Judge Richard M. Freid's comprehensive seventy-two page written opinion, dated January 25, 2017. However, we add the following comments.

In June 2013, the Division instituted a Title 9 action against defendants, and the trial court granted the Division's request for care and supervision of defendants' children. The Division sought such relief because Susan, who suffers from schizophrenia, chronic paranoid type, was not compliant in taking her anti-psychotic medication and was exhibiting delusional behavior.

A psychological evaluation of Matthew in August 2013 revealed he was unable to protect the children from Susan's psychiatric problems because he failed to understand the extent of her mental illness and its impact on the children. At the end of August 2013, the court granted the Division's application for physical custody of the children, who were then placed in resource homes. Defendants were ordered to comply with various services.

In the fall of 2013, Susan was not fully compliant with treatment and continued to exhibit delusional behavior. However, over the ensuing months, she substantially complied with treatment and, in June 2014, the children were reunited with defendants. However, in March 2015, Susan ceased taking her medication and again became delusional. Following an emergent hearing later that month, the court ordered the Division to take custody of the children. The

children were placed into a resource home, where they have remained since. The resource parents want to adopt the children.

In May 2015, Susan was involuntarily committed to a psychiatric hospital for a number of weeks due to increased psychosis, paranoia, and delusional behavior. She was readmitted in August 2015 because she was exhibiting the same symptoms. In November 2015, the Division filed a guardianship complaint against both defendants.

During trial, the Division called psychiatrist Samiris Sostre, M.D., as one of its expert witnesses. Sostre examined Susan in 2013, 2015, and 2016. During the 2016 examination, Susan reported she was taking Haldol but commented she did not believe she had a mental illness. Sostre testified Susan did not present symptoms of psychosis, as she had during Sostre's previous examinations of her, which the doctor attributed to the fact that Susan was taking Haldol. However, Susan still exhibited symptoms of schizophrenia, which included "a lack of responsiveness to social cues and inability to read social cues, a flattened affect." Sostre stated these symptoms, referred to as "negative symptoms," were "quite marked" in Susan and do not respond to medication.

Sostre opined the chronic nature of Susan's schizophrenia creates an "unacceptable risk" of harm to the children. The negative symptoms preclude

5

Susan from connecting to her children emotionally, which has and will prevent her from meeting her children's needs. Further, Susan has a history of failing to take her medication, which controls her psychotic symptoms and keeps her from becoming delusional.

Sostre also evaluated Matthew in 2016. She determined he did not have any psychiatric illness. However, although in recent years Matthew has begun to realize Susan might have a mental illness, he did not recognize her illness negatively impacted her ability to care for their children. For example, Matthew informed Sostre that Susan had told the children they had AIDS and the children also heard Susan say the government was after her. However, Matthew did not think the children would be adversely affected by these comments. He also harbored a belief Susan was psychic because she heard voices and had visual hallucinations. Sostre testified that such:

> sort of disconnect from what a child's needs are and an understanding of what a child needs was really prominent during this interview [with Matthew] and . . . really concerning. . . .
>
> I did not think that he would be able to protect them from – from his wife. And even if [Susan] wasn't in the picture, his understanding of a child's needs was so poor and so impaired that I didn't think that he would be able to respond to them appropriately either.

Sostre further found Matthew's parenting deficits were not amenable to treatment.

The Division also called psychologist Robert Miller, Ph.D., as an expert witness. Miller evaluated each defendant and also conducted a bonding evaluation of each with the children. After evaluating each defendant individually, Miller arrived at essentially the same conclusions as Sostre about the defendants and their abilities to parent.

During the bonding evaluations, Miller observed that Susan had only a detached emotional bond with the children. She merely sat on the couch and passively watched the children. Only one child sought to have any contact with her. Similarly, Matthew merely sat on the couch and, for the most part, did not interact with the children. Miller found only a weak attachment between the children and Matthew, and commented that the children behaved as if their father was "someone pretty much to avoid." Miller found only a weak attachment between the children and Matthew.

Miller also conducted a bonding evaluation of the resource parents with the children. He testified the children's interaction with the resource parents was "markedly" different from their interaction with defendants. The children sat close to and interacted with their resource parents. Miller testified the

7

children would suffer serious and enduring harm if returned to defendants' custody, and the termination of defendants' parental rights would not do more harm than good.

The law guardian called psychologist Eric Kirschner, Ph.D., as the children's expert witness. He performed a psychological evaluation of defendants and conducted a bonding evaluation of defendants with their children, and of one of the resource parents with the children. His conclusions were consistent with Sostre's and Miller's conclusions. Neither defendant called any expert witnesses.

In his written opinion Judge Freid made detailed findings as to each prong of N.J.S.A. 30:4C-15.1(a), and determined the Division met by clear and convincing evidence all of the legal requirements for a judgment of guardianship as to both defendants. The judge's opinion tracks the statutory requirements of N.J.S.A. 30:4C-15.1(a), accords with N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420 (2012), N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88 (2008), In re Guardianship of K.H.O., 161 N.J. 337 (1999), In re Guardianship of D.M.H., 161 N.J. 365 (1999), and N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591 (1986), and is supported by the record. F.M., 211

N.J. at 448-49. We affirm substantially for the reasons Judge Freid expressed in his cogent written opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2413-16T2